**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| IN RE COPAXONE 40 MG CONSOLIDATED CASES | ) ) ) ) ) ) ) | Civil Action No. 14-1171-GMS (CONSOLIDATED) |

## JOINT CLAIM CONSTRUCTION CHART

Pursuant to the Court's Scheduling Order, the parties in the above-captioned matter submit their Joint Claim Construction Chart for certain claim terms in U.S. Patent Nos. 8,232,250; 8,399,413; and 8,969,302. A copy of the Joint Claim Construction Chart is attached as Exhibit A.[1]

During the meet and confer process, the parties reached an agreement on the construction of the claim terms set forth in Section I of the attached chart. The parties jointly and respectfully submit that, if the Court deems it appropriate, the Court include these agreed-upon constructions in the ultimate claim construction order. In the alternative, the parties agree that these agreed-upon constructions are binding between the parties.

Section II of the attached chart includes the parties' proposed constructions of the disputed claim terms with citations to the intrinsic evidence in support of their respective proposed constructions. The parties have made a good-faith effort to include herein all known support for their respective constructions, but reserve the right to supplement the attached chart with additional intrinsic evidence and to rely on such evidence in their claim construction briefs.

---

[1] Defendants' position is that their proposed constructions shall not be construed or interpreted, and shall not work, operate or be urged or deemed in any way, as an admission by Defendants that any claim or claim limitation of the patents-in-suit is in compliance with the requirements of 35 U.S.C. §§ 101, 102, 103, or 112 or as a waiver by any Defendant of its right to assert in this action that any claim of the patents-in-suit is invalid for failure to comply with the requirements of 35 U.S.C. §§ 101, 102, 103, or 112.

Section III of the attached chart identifies claim terms that Defendants contend are not limiting and Plaintiffs' responses to these contentions.

Finally, Section IV of the attached chart contains constructions of the phrases in Section III that the parties agree upon only if the court finds that the phrases are limiting.  As explained in Section III, however, Defendants maintain that the phrases are not limiting.


Dated:  August 14, 2015

/s/ Stephen B. Brauerman
Richard D. Kirk (No. 922)
Stephen B. Brauerman (No. 4952)
Vanessa R. Tiradentes (No. 5398)
Sara E. Bussiere (No. 5725)
BAYARD, P.A.
222 Delaware Avenue, Suite 900
Wilmington, DE 19801
(302) 655-5000
rkirk@bayardlaw.com
sbrauerman@bayardlaw.com
vtiradentes@bayardlaw.com
sbussiere@bayardlaw.com

/s/ David M. Fry
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
David M. Fry (No. 5486)
SHAW KELLER LLP
300 Delaware Avenue, Suite 1120
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com

David M. Hashmall
Elizabeth J. Holland
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY  10018-1405
(212) 813-8800

Daryl L. Wiesen
John T. Bennett
Nicholas K. Mitrokostas
GOODWIN PROCTER LLP
Exchange Place
53 State Street
Boston, MA 02109
(617) 570-1000

William G. James
GOODWIN PROCTER LLP
901 New York Avenue, NW
Washington, DC 20001
(202) 346-4000

*Attorneys for Plaintiffs Teva Pharmaceuticals
USA, Inc., Teva Pharmaceutical Industries,
Ltd., Teva Neuroscience, Inc. and Yeda*

/s/ John C. Phillips, Jr.
John C. Phillips, Jr. (No. 110)
David A. Bilson (No. 4986)
PHILLIPS, GOLDMAN & SPENCE, P.A.
1200 North Broom Street
Wilmington, DE 19806
jcp@pgslaw.com
dab@pgslaw.com

Constance S. Huttner
Beshoy M. Sharoupim
BUDD LARNER, P.C.
150 John F. Kennedy Parkway
Short Hills, NJ 07078
(973) 315-4430

*Attorneys for DRL Defendants*

/s/ Arun J. Mohan
Frederick L. Cottrell, III (No. 2555)
Arun J. Mohan (No. 6110)
RICHARDS, LAYTON & FINGER, P.C.
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
cottrell@rlf.com
mohan@rlf.com

Shannon M. Bloodworth
PERKINS COIE LLP
700 13th Street, NW
Washington, DC 20005
(202) 654-6204

*Attorneys for Mylan Inc., Mylan*
*Pharmaceuticals Inc.*

/s/ Dominick T. Gattuso
Dominick T. Gattuso (No. 3630)
PROCTOR HEYMAN ENERIO LLP
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(308) 472-7300
DGattuso@proctorheyman.com

William A. Rakoczy
Deanne M. Mazzochi
Rachel Pernic Waldron
RAKOCZYMOLINOMAZZOCHI SIWIK LLP
6 West Hubbard Street, Suite 500
Chicago, IL 60654
(312) 222-7543
wrakoczy@rmmslegal.com
dmazzochi@rmmslegal.com
rwaldron@rmmslegal.com

*Attorneys for Defendants Sandoz Inc.*
*and Momenta Pharmaceuticals, Inc.*

/s/ Richard L. Renck
Richard L. Renck (No. 3893)
DUANE MORRIS LLP
222 Delaware Avenue, Suite 1600
Wilmington, DE 19801-1659
(302) 657-4900

Anthony J. Fitzpatrick
Vincent L. Capuano
Christopher S. Kroon
Carolyn A. Alenci
DUANE MORRIS LLP
100 High Street, Suite 2400
Boston, MA 02110-1724
(857) 488-4200

*Attorneys for Amneal Pharmaceuticals LLC*

/s/  Robert M. Vrana
Melanie K. Sharp (No. 2501)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
YOUNG CONAWAY STARGATT &
TAYLOR LLP
1000 North King Street
Wilmington, DE 19801
(302) 571-6681
msharp@ycst.com
rvrana@ycst.com
swilson@ycst.com

E. Anthony Figg
Sharon L. Davis
R. Elizabeth Brenner-Leifer
Seth E. Cockrum
Jennifer Nock
ROTHWELL, FIGG, ERNST &
MANBECK, P.C.
607 14th Street, NW, Suite 800
Washington, DC 20005
(202) 783-6040

*Attorneys for Synthon Pharmaceuticals Inc.,
Synthon B.V, and Synthon s.r.o.*

# EXHIBIT A

## I.  AGREED-UPON CONSTRUCTIONS

| Patent | Claim(s) | Claim Term | Agreed-Upon Construction |
|---|---|---|---|
| '250 | 6 | "time to a confirmed relapse" | Time before a first confirmed relapse or between subsequent confirmed relapses. |
| '250<br>'302 | 16, 17<br>1, 10 | "relapsing form of multiple sclerosis" | Secondary progressive multiple sclerosis with superimposed relapses, relapse-remitting multiple sclerosis and/or progressive-relapsing multiple sclerosis. |
| '250<br>'413<br>'302 | 1, 15<br>1, 16, 20<br>3 | "first clinical episode" | A first clinical attack suggestive of multiple sclerosis. |
| '250 | 1, 15 | "clinically definite multiple sclerosis" | A human that has had two clinical attacks suggestive of multiple sclerosis and clinical evidence of two separate lesions, or two clinical attacks suggestive of multiple sclerosis, and clinical evidence of one lesion and paraclinical evidence of another separate lesion. |

## II. DISPUTED TERMS AND PROPOSED CONSTRUCTIONS

| Patent | Claim(s) | Proposed Claim Terms | Teva's Proposed Construction and Intrinsic Evidence[2] | Defendants' Proposed Construction and Intrinsic Evidence[2] |
|---|---|---|---|---|
| '250<br>'413<br>'302 | 1, 15, 19<br>1, 19, 20<br>1, 10 | "comprising"/"comprises" | No construction required; plain and ordinary meaning.  If the Court construes the terms "comprising"/"comprises" in conjunction with the "regimen" terms in claims 1, 15, and 19 of the '250 patent and 1, 19, and 20 of the '413 patent, and the terms "three subcutaneous injections [. . .] per week" and "subcutaneous injection [. . .] three times per week [with at least one day between every subcutaneous injection]" in claims 1 and 10 of the '302 patent, "comprising"/"comprises" should have its plain and ordinary meaning of "including but not limited to" such that it allows additional treatments to be administered but does not open the glatiramer acetate regimen to allow more than three injections of glatiramer acetate per week. | The term "comprising" is an open-ended term that does not exclude additional, unrecited elements or method steps, and therefore means "including, but not limited to three subcutaneous injections of a 40 mg dose of glatiramer acetate over a period of seven days." |
| | | | Intrinsic Evidence:<br>'250 Patent Specification<br>Col. 2, lines 47-51 | Intrinsic Evidence:<br>Specification<br>Common specification of the '250, |

---

[2]  Plaintiffs and Defendants reserve the right to rely on the entire intrinsic record, including any portion of the specification, prosecution history and intrinsic prior art references cited therein, to support or rebut proposed claim construction positions.  Plaintiffs and Defendants may also rely on intrinsic and extrinsic evidence identified by any party in support of their constructions; on expert testimony to rebut Plaintiffs' and Defendants' proposed meanings; and on expert testimony or other evidence, if any, offered by any party in support of their own claim constructions.

| Patent | Claim(s) | Proposed Claim Terms | Teva's Proposed Construction and Intrinsic Evidence[2] | Defendants' Proposed Construction and Intrinsic Evidence[2] |
|---|---|---|---|---|
| | | | Col. 4, lines 3-20<br><br>Col. 8, lines 57-67<br><br>Col. 9, lines 21-25 and 31-37<br><br>Col. 16, lines 12-28 and 35-45 (claim 1)<br><br>'413 Patent Specification<br><br>Col. 2, lines 43-47<br><br>Col. 3, line 66 to col. 4, line 15<br><br>Col. 8, lines 52-62<br><br>Col. 9, lines 15-19 and 24-30<br><br>Col. 16, lines 2-18 and 26-36 (claim 1)<br><br>'302 Patent Specification<br><br>Col. 2, lines 43-47<br><br>Col. 3, line 66 to col. 4, line 15<br><br>Col. 8, lines 57-67<br><br>Col. 9, lines 21-25 and 30-36<br><br>Col. 16, lines 12-28<br><br>'250 Patent File History<br><br>5/14/12 Response to Office Action at 2, 4-5, 6-7, 9-10, 12, 17, and 19 (TEVCOP00000191, TEVCOP00000193-194, TEVCOP00000196-197, TEVCOP00000199-200, TEVCOP00000202, TEVCOP00000207, and TEVCOP00000209)<br><br>'413 Patent File History<br><br>8/6/12 Response to Office Action at 2, 5-6, 8-9, 11-12, and 16 (TEVCOP00001729, | '413, and '302 patent:  The entire common specification, including, for example, the '250 patent at Abstract, 1:67-2:3, 2:55-3:7, 4:3-13, 4:21-64, 5:10-11, 5:20-33, 5:51-54, 16:25-45, 17:24-18:6, and 18:19-26; the '413 patent at 16:26-36, 17:9-23, and 18:1-27; and the '302 patent at 16:37-41, and 17:4-12.  The entire specification supports Defendants' construction at least because nothing in the specification limits the term.<br><br>Prosecution History of Patent App. 14/673,257<br><br>3/30/2015 Substitute Preliminary Amendment at, *e.g.*, 3<br><br>5/22/2015 Office Action at, *e.g.*, 4-6<br><br>Summary of 6/17/2015 Examiner Interview at, *e.g.*, 7-8<br><br>6/25/15 Response to 5/22/2015 Office Action at, *e.g.*, 2-3, 5, 19-20 |

| Patent | Claim(s) | Proposed Claim Terms | Teva's Proposed Construction and Intrinsic Evidence[2] | Defendants' Proposed Construction and Intrinsic Evidence[2] |
|---|---|---|---|---|
| | | | TEVCOP00001732-733, TEVCOP00001742-743, TEVCOP00001745-746, and TEVCOP00001750)<br><br>'302 Patent File History<br><br>12/9/13 Response to Office Action at 12-15 (TEVCOP00552798-801)<br><br>8/5/14 Response to Office Action at 7-9, 12-13, and 15 (TEVCOP00552839-841, TEVCOP00552844-845, and TEVCOP00552847) | |
| '250<br>'413 | 1, 15, 19<br>1, 19, 20 | "regimen of three subcutaneous injections [. . .] over a period of seven days with at least one day between every subcutaneous injection"<br><br>"regimen of three subcutaneous injections [. . .] over a period of seven days with at least one day between every injection" | A continuous treatment requiring three and only three subcutaneous injections each and every week with at least one day between every injection. | A program or systemic plan of treatment that does not exclude additional, unrecited elements or method steps, and therefore means "including, but not limited to three subcutaneous injections of a 40 mg dose of glatiramer acetate over a period of seven days with at least one day between every injection."<br><br>Defendants moreover assert that the phrase Teva identified for construction is an inappropriate "term" for construction; it is a partial clause. The term "regimen" should be construed alone to mean "a program or systemic plan of treatment." |

| Patent | Claim(s) | Proposed Claim Terms | Teva's Proposed Construction and Intrinsic Evidence[2] | Defendants' Proposed Construction and Intrinsic Evidence[2] |
|---|---|---|---|---|
| | | | Intrinsic Evidence: <br><br> '250 Patent Specification <br><br> Col. 2, lines 47-51, "Disclosed is an effective low frequency dosage regimen of GA administration to patients suffering from a relapsing form of multiple sclerosis, including patients who have experienced a first clinical episode and have MRI features consistent with multiple sclerosis." <br><br> Col. 4, lines 3-20, "This invention provides a method . . . comprising administering to the human patient three subcutaneous injections of a therapeutically effective dose of glatiramer acetate over a period of seven days with at least one day between every subcutaneous injection so as to thereby alleviate the symptom of the patient. <br><br> In another embodiment, there are three injections for every seven days and there must be at least one day between each injection.  In a further embodiment, possible injection schedules include Day 1, Day 3, Day 5; Day 1, Day 3, Day 6; Day 1, Day 3, Day 7; Day 1, Day 4, Day 6; Day 1, Day 4, Day 7; Day 1, Day 5, Day 7; Day 2, Day 4, Day 6; Day 2, Day 4, Day 7; Day 2, Day 5, Day 7; or Day 3, Day 5, Day 7." | Intrinsic Evidence: <br><br> Specification <br><br> Common specification of the '250, '413, and '302 patent: The entire common specification, including, for example, the '250 patent at Abstract, 1:67-2:3, 2:47-51, 2:55-3:7, 4:3-13, 4:21-64, 5:10-11, 5:20-33, 5:51-54, 9:30-36, 16:12-45, 16:25-45, 17:24-18:6, and 18:19-26; and the '413 patent at16:26-36, 17:9-23, and 18:1-27. The entire specification supports Defendants' construction at least because nothing in the specification limits the term. <br><br> Prosecution History of the '250 patent <br><br> 2/14/12 Office Action at, *e.g.*, TEVCOP00000100-104 <br><br> 5/8/2012 Examiner Interview (TEVACOP00000189) <br><br> 5/14/2012 Response to 2/14/2012 Office Action and 5/8/2012 Examiner Interview at, *e.g.*, TEVACOP00000191-193, 196-202. <br><br><br> Prosecution History of '413 Patent <br><br> 2/6/12 Office Action at, *e.g.*, TEVACOP00001706-1712 <br><br> 8/6/12 Response to 2/6/12 Office |

| Patent | Claim(s) | Proposed Claim Terms | Teva's Proposed Construction and Intrinsic Evidence[2] | Defendants' Proposed Construction and Intrinsic Evidence[2] |
|---|---|---|---|---|
| | | | Col. 8, lines 57-67, "A . . . study . . . to assess the efficacy, safety and tolerability of Glatiramer Acetate (GA) injection 40 mg/ml administered three times weekly by subcutaneous injection over placebo in a double-blind design.<br><br>Methods:  The study is designed to select three days a week for injection.  Three injections are administered for every seven days and there must be at least one day between each injection."<br><br>Col. 9, lines 21-25, "Study Design: Eligible subjects are randomized in a 2:1 ratio (40 mg:placebo) and assigned one of the following three treatment arms:  1.  40 mg s.c. GA three times weekly . . ."<br><br>Col. 9, lines 31-37, "Subjects successfully completing the study are offered the opportunity to enter into an open label extension in which all subjects will continue treatment with 40 mg/ml GA dose.  This is done until the 40 mg/ml GA dose is commercially available for the treatment of relapsing remitting multiple sclerosis (RRMS) patients or until the development of this dose regimen is stopped by the Sponsor."<br><br>Col. 16, lines 12-28, " . . . the subject application discloses an effective low frequency dosage regimen of GA | Action at, e.g., TEVACOP00001729, 1742-43, 1745-46.<br><br>Final Office Action, dated October 10, 2012 at, e.g., TEVCOP00002761-2762<br><br>Prosecution History of Patent App. 14/673,257<br><br>3/30/2015 Substitute Preliminary Amendment at, e.g., 3<br><br>5/22/2015 Office Action at, e.g., 4-6<br><br>Summary of 6/17/2015 Examiner Interview at, e.g., 7-8<br><br>6/25/15 Response to 5/22/2015 Office Action at, e.g., 2-3, 5 19-20 |

| Patent | Claim(s) | Proposed Claim Terms | Teva's Proposed Construction and Intrinsic Evidence[2] | Defendants' Proposed Construction and Intrinsic Evidence[2] |
|---|---|---|---|---|
| | | | administration to patients suffering from a relapsing form of multiple sclerosis, including patients who have experienced a first clinical episode and have MRI features consistent with multiple sclerosis. Based on the performance of the dosage regimen in these studies, the administration of three s.c. injections over a period of seven days with at least one day between every injection is also expected to work in the treatment of patients who have experienced a clinically isolated syndrome (CIS)." Co. 16, lines 35-45 (claim 1) '413 Patent Specification[3] Col. 2, lines 43-47 Col. 3, line 66 to col. 4, line 15 Col. 8, lines 52-62 Col. 9, lines 15-19 and 24-30 Col. 16, lines 2-18 and 26-36 (claim 1) '250 Patent File History 5/4/12 Response to Office Action at 2 and 4-5 (TEVCOP00000191 and TEVCOP00000193-194) 5/14/12 Response to Office Action at 6-7 and 10 (TEVCOP00000196-197 and | |

---

[3] The specifications of the '250 and '413 patents are the same, and the intrinsic evidence cited in the specification of the '413 patent in this section is the same as intrinsic evidence cited above for the '250 patent.

| Patent | Claim(s) | Proposed Claim Terms | Teva's Proposed Construction and Intrinsic Evidence[2] | Defendants' Proposed Construction and Intrinsic Evidence[2] |
|---|---|---|---|---|
| | | | TEVCOP00000200): "As amended the claims cannot be reasonably construed to read on only a single seven day period of administration, at least because the claims as amended require a 'regimen.'" 5/14/12 Response to Office Action at 9 (TEVCOP00000199): "The Examiner's position is based on the view that the claims are so broad as to read on a therapy consisting of three, and only three administrations of glatiramer acetate, the three administrations occurring in a single seven day period.  Applicant submits that this is an unreasonably broad claim construction which a person skilled in the art would not reach.  Rather, a person skilled in the art would interpret the claims as being directed at a dosage <u>regimen</u> at least because the claims recite 'so as thereby alleviate the symptom.'" 5/14/12 Response to Office Action at 9-10 (TEVCOP00000199-200):  "In light of this, a person of ordinary skill in the art would clearly understand that recitation of administering to the human patient a therapeutically effective regimen of three subcutaneous injections over a period of seven days with at least one day between every subcutaneous injection defined a regimen for <u>therapeutic</u> effect." | |

| Patent | Claim(s) | Proposed Claim Terms | Teva's Proposed Construction and Intrinsic Evidence[2] | Defendants' Proposed Construction and Intrinsic Evidence[2] |
|---|---|---|---|---|
| | | | 5/14/12 Response to Office Action at 12 (TEVCOP00000202): "Flechter et al., which teaches alternate day administration cannot anticipate a 'regimen' requiring administration 3 times during a seven day period because the treatment protocol of Flechter et al. results in four administrations every other successive seven day period." 5/14/12 Response to Office Action at 17 (TEVCOP00000207): "As discussed above, the alternate day administration of Flechter et al. does not anticipate the claimed 'regimen'.  The dosage regimen of Flechter et al. is alternate days; the regimen of Cohen et al. is daily.  In contrast, the claimed dosage regimen requires less frequent administration than either Flechter et al. or Cohen et al.; 'three subcutaneous doses  . . . over a period of seven days … .'" 5/14/12 Response to Office Action at 19 (TEVCOP00000209): "Furthermore, the claimed invention is directed to a regimen that is less frequent than alternate day therapy.  As discussed above, Flechter et al. increased the time between administrations by 24 hours, i.e. from 24 to 48 hours.  The claimed dosage regimen requires yet longer spans without treatment.  For example, in some instances | |

9

| Patent | Claim(s) | Proposed Claim Terms | Teva's Proposed Construction and Intrinsic Evidence[2] | Defendants' Proposed Construction and Intrinsic Evidence[2] |
|--------|----------|----------------------|--------------------------------------------------------|--------------------------------------------------------------|
| | | | there will be a span of three consecutive days without treatment, *e.g.* when treatment occurs on days 1, 3 and 7 or on days 1, 5 and 7, or even instances where there are two spans of two consecutive days without treatment, *e.g.* when treatment occurs on days 1, 4 and 7." <br><br> '413 Patent File History <br><br> 8/6/12 Response to Office Action at 2, 5-6, 8-9, 11-12, and 16 (same evidence identified above in file history of '250 patent) (TEVCOP00001729, TEVCOP00001732-33, TEVCOP00001742-743, TEVCOP00001745-746, and TEVCOP00001750) | |
| '302 | 1, 10 | "three subcutaneous injections [. . .] per week" <br><br> "subcutaneous injection [. . .] three times per week [with at least one day between every subcutaneous injection]" | A continuous treatment requiring three and only three subcutaneous injections each and every week [with at least one day between every injection]. | Plain and ordinary meaning but in no way limited to three and only three injections per week. <br><br> Defendants moreover assert that the phrase identified by Teva for construction is an inappropriate "term" for construction; it is a partial clause. |

| Patent | Claim(s) | Proposed Claim Terms | Teva's Proposed Construction and Intrinsic Evidence[2] | Defendants' Proposed Construction and Intrinsic Evidence[2] |
|---|---|---|---|---|
| | | | Intrinsic Evidence:<br><br>'302 Patent Specification[4]<br><br>Col. 2, lines 43-47<br><br>Col. 3, line 66 to col. 4, line 15<br><br>Col. 8, lines 57-67<br><br>Col. 9, lines 21-25 and 30-36<br><br>Col. 16, lines 12-28<br><br>'302 Patent File History<br><br>12/9/13 Response to Office Action at 12-15 (TEVCOP00552798-801)<br><br>8/5/14 Response to Office Action at 7 (TEVCOP00552839): "Rather, one skilled in the art would clearly interpret the claims as being directed at a dosage <u>regimen</u>. Presently presented claim 34 recites 'three subcutaneous injections of a 40 mg/ml dose of glatiramer acetate <u>per week</u>' (emphases added). Applicant submits that, as amended, the claims cannot be reasonably construed to read on only a single seven day period of administration."<br><br>8/5/14 Response to Office Action at 8 (TEVCOP00552840): "In light of this, one of ordinary skill in the art would clearly understand that the recitations of | Intrinsic Evidence:<br><br>Specification<br><br>The entire specification of the '302 patent including, for example, the '302 patent at 16:37-41, and 17:4-12. The entire specification supports Defendants' construction at least because nothing in the specification limits the term<br><br>Prosecution History of '302 Patent<br><br>7/9/13 Office Action at, *e.g.*, 3-8.<br><br>12/9/13 Response to 7/9/13 Office Action at, *e.g.*, 6-15<br><br>2/5/14 Final Office Action, at *e.g.*, p.3-5<br><br>8/5/14 Response to 2/5/14 Final Office Action at, *e.g.*, 3-9<br><br>Prosecution History of Patent App. 14/673,257<br><br>5/22/2015 Office Action at, *e.g.*, 4-6<br><br>Summary of 6/17/2015 Examiner Interview at, *e.g.*, 7-8<br><br>6/25/2015 Response to 5/22/2015 Office Action at, *e.g.*, 2-3, 19-20. |

---

[4] The specifications of the '250, '413, and '302 patents are the same, and the cites to the specification of the '302 patent in this section are the same as those cited above for the '250 and '413 patents.

| Patent | Claim(s) | Proposed Claim Terms | Teva's Proposed Construction and Intrinsic Evidence[2] | Defendants' Proposed Construction and Intrinsic Evidence[2] |
|---|---|---|---|---|
| | | | 'administration to the human patient of three subcutaneous injections . . . per week' in claim 34 and 'subcutaneous injections injection by the human patient . . . three times per week' in claim 43 define dosage regimens." | |
| | | | 8/5/14 Response to Office Action at 9 (TEVCOP00552841):   "Flechter et al., which teaches alternate day administration cannot anticipate a regime requiring administration 3 times per week because the treatment protocol of Flechter et al. results in four administrations every other week.  Thus, when given their broadest <u>reasonable</u> interpretation, Flechter et al. does not anticipate the instant claims." | |
| | | | 8/5/14 Response to Office Action at 12 (TEVCOP00552844):   "The hypothetical combination of Flechter et al. and Cohen et al., even if proper, would yield alternate day 40mg GA, <u>not</u> '<u>three</u> subcutaneous injections of a 40 mg/ml dose of glatiramer acetate <u>per week</u>' as required by claim 34 (emphases added)." | |
| | | | 8/5/14 Response to Office Action at 13 (TEVCOP00552845):   "As discussed above, the alternate day administration of Flechter does not anticipate the claimed regimen.  The dosage regimen of Flechter et al. is alternate days; the regimen of | |

| Patent | Claim(s) | Proposed Claim Terms | Teva's Proposed Construction and Intrinsic Evidence[2] | Defendants' Proposed Construction and Intrinsic Evidence[2] |
|---|---|---|---|---|
| | | | Cohen et. al. is daily.  In contrast, the claimed dosage regimen requires <u>less frequent</u> administration than either Flechter et al. or Cohen et al.; 'administration to the human patient of three subcutaneous injections . . . per week' as in claim 34 and 'subcutaneous injection by the human patient . . . three times per week' as in claim 43." 8/5/14 Response to Office Action at 15 (TEVCOP00552847):   "The claimed invention is directed to a regimen that is <u>less frequent</u> than alternate day therapy.  As discussed above, Flechter et al. demonstrates a marked decrease in efficacy when reducing the frequency of GA administration.  Flechter et al. increased the time between administrations by 24 hours, i.e. from 24 to 48 hours.  The claimed dosage regimen requires yet longer spans without treatment because it calls for only three injections per week." <u>'250 Patent File History</u> 5/14/12 Response to Office Action at 6-7, 9-10, 12, 17, and 19 (TEVCOP00000196-197, TEVCOP00000199-200, TEVCOP00000202, TEVCOP00000207, and TEVCOP00000209) <u>'413 Patent File History</u> | |

13

| Patent | Claim(s) | Proposed Claim Terms | Teva's Proposed Construction and Intrinsic Evidence[2] | Defendants' Proposed Construction and Intrinsic Evidence[2] |
|---|---|---|---|---|
| | | | 8/6/12 Response to Office Action at 8-9, 11-12, and 16 (TEVCOP00001742-743, TEVCOP00001745-746, and TEVCOP00001750) | |
| '250 | 5 | "brain atrophy" | The loss of brain tissue. | A reduction in brain volume over time. |
| | | | Intrinsic Evidence: <br><br> '250 Patent Specification <br><br> Col. 12, lines 19-20 and 46-49, "Brain atrophy as defined by the percentage change from baseline to month 12 (end of placebo-controlled phase) in normalized gray matter volume and in normalized white matter volume." <br><br> Col. 13, line 66 to col. 14, line 5 <br><br> Col. 14, line 62 to col. 15, line 4, "Treatment with 40 mg s.c. GA three times weekly significantly reduces brain atrophy as defined by the percentage change from baseline to month 12 in normalized gray matter volume and in normalized white matter volume. Treatment with 40 mg s.c. GA three times weekly is at least as effective as 20 mg s.c. GA daily administration at reducing brain atrophy as defined by the percentage change from baseline to month 12 in normalized gray matter volume and in normalized white matter volume." | Intrinsic Evidence: <br><br> The '250 Specification <br><br> The '250 patent at 4:33-34; 12:19-20, 46-49; 13:43-44; 13:66-14:5; 14:62–15:4 <br><br> PCT/US2008 /013146, at 26:14-27:3 ('413 Patent file history at TEVCOP_1524.) <br><br> Bjartmar & Fox, Drugs of Today, 38(1):17-29 (2002), at 22 ('413 Patent file history at TEVCOP_2446.) |

## III.  TERMS DEFENDANTS CONTEND ARE NOT LIMITING

| Patent | Claim(s) | Claim Terms Defendants Contend Are Not Limiting | Teva's Response/Proposed Construction and Intrinsic Evidence | Defendants' Intrinsic Evidence that Phrases Are Not Claim Limitations |
|---|---|---|---|---|
| '250 | 1 | "alleviating a symptom of relapsing-remitting multiple sclerosis" | This term constitutes a claim limitation and, other than the construction of "alleviating" set forth in Section I, does not require construction; plain and ordinary meaning.<br><br>Intrinsic Evidence:<br>'250 Patent Specification<br>Col. 2, lines 55-64<br>Col. 4, lines 3-12<br>Col. 16, line 46 to col. 17, line 13 (this preamble phrase serves as an antecedent basis for the term "wherein alleviating a symptom comprises . . ." in dependent claims 2 and 4-11).<br>'250 Patent File History<br>5/14/12 Response to Office Action at 8-9 (TEVCOP00000198-199): "Specifically, the Examiner alleged that the claims encompass a method of alleviating a symptom of multiple sclerosis by administering 'as few as three subcutaneous injections of 40mg of glatiramer acetate (a.k.a. copolymer-1) on alternate days [during] a one week period' . . . The Examiner further alleged | *Defendants' intrinsic evidence listed below applies to each of the phrases in this Section III.*<br><br>U.S. Provisional App. No. 61/274,687 p. 27, ll. 15-26; p. 30, ll. 1-31; p. 31, l. 2 – p. 32, l. 13<br>Specification (common to all patents)<br>*e.g.*, '250 patent, 12:8-55; 12:55-67; 13:45 – 14:5; 14:6 – 15:50<br>Prosecution History of '250 Patent<br>2/14/12 Office Action, ¶¶ 2, 4, 6 (TEVCOP00000100-104)<br>5/14/12 Applicant Arguments/Remarks Made in Response to 2/14/12 Office Action, pp. 6-10; 12; 14-16; 18-19 (TEVCOP00000196-200, -204-206, -208-209)<br>Prosecution History of '413 Patent<br>2/6/12 Office Action, ¶¶ 2, 4, 6 (TEVCOP00001706-1710)<br>8/6/12 Applicant Arguments/Remarks Made in Response to 2/6/12 Office Action, pp. 7-9; 11-13; 15-18 |

| Patent | Claim(s) | Claim Terms Defendants Contend Are Not Limiting | Teva's Response/Proposed Construction and Intrinsic Evidence | Defendants' Intrinsic Evidence that Phrases Are Not Claim Limitations |
|--------|----------|--------|--------|--------|
| | | | that neither the specification nor the art of record provides evidence that a benefit has been shown, or can reasonably be predicted, to result from administration of <u>as few as three doses of glatiramer acetate</u>; and that the applicant has not demonstrated measurable benefit from the administration of <u>only</u> three doses of glatiramer acetate.<br><br>*Applicant's Response*<br><br>In response, applicant respectfully traverses.  The Examiner's position is based on the view that the claims are so broad as to read on a therapy consisting of three, and only three administrations of glatiramer acetate, the three administrations occurring in a single seven day period."<br>5/14/12 Response to Office Action at 12-20 (TEVCOP00000202-210)<br>6/15/12 Notice of Allowance (TEVCOP00001161-165) | (TEVCOP00001741-743; -745-747; -749-752)<br>10/10/12 Final Office Action ¶ 5 (TEVCOP00002761-2762)<br><br>Prosecution History of '302 Patent<br>7/9/13 Office Action, ¶¶ 4, 6 (TEVCOP00552760, -761-62)<br>12/9/13 Applicant Arguments/Remarks Made in Response to 7/9/13 Office Action, pp. 11-17 (TEVCOP00552797-803)<br>2/5/14 Final Office Action, ¶¶ 5, 8 (TEVCOP00552824-828)<br>8/5/14 Applicant Argument/Remarks Made in Response to 2/5/14 Final Office Action, pp. 8-9, 13-15 (TEVCOP00552840-841, −845-847)<br>Applicant Initiated Interview Summary, dated November 24, 2014, p. 2 (TEVCOP00553595) |
| '250 | 15 | "increasing the tolerability of GA treatment" | This term constitutes a claim limitation and, other than the construction of "tolerability" set forth in Section I, does not require construction; plain and ordinary meaning. | Prosecution History of Patent App. 14/673,257<br>Preliminary Amendment, dated March 30, 2015, Claims 37-38, 43-44, 47-48, |

| Patent | Claim(s) | Claim Terms Defendants Contend Are Not Limiting | Teva's Response/Proposed Construction and Intrinsic Evidence | Defendants' Intrinsic Evidence that Phrases Are Not Claim Limitations |
|---|---|---|---|---|
| | | | Intrinsic Evidence: <br><br> '250 Patent Specification <br><br> Col. 2, line 65 to col. 3, line 7 <br><br> Col. 3, lines 31-51 and 60-67 <br><br> Col. 12, lines 62-67 <br><br> Col. 15, line 52 to col. 16, line 18 <br><br> Col. 18, lines 7-15 (this preamble phrase serves as an antecedent basis for the term "wherein increasing the tolerability of glatiramer acetate treatment in the human patient suffering from a relapsing form of multiple sclerosis comprises . . ." in dependent claims 16-17). <br><br> '250 Patent File History <br><br> 5/14/12 Response to Office Action at 12-20 (TEVCOP00000202-210) <br><br> 6/15/12 Notice of Allowance (TEVCOP00001161-165) | 50-51, 54-55, 57-58 <br><br> 5/22/15 Office Action, pp. 13, 15-16 <br><br> 6/17/15 Applicant Argument/Remarks: Agenda for 6/17/15 Telephonic Interview ¶ V <br><br> 6/25/15 Applicant Arguments/Remarks Made in Response to 5/22/15 Office Action,  Newly Amended Claims 37-38, 43-44, 47-51, 60-71; pp. 13-15 <br><br> Applicant Initiated Interview Summary, dated 7/2/15, p. 2 <br><br> IPR2015-00643 ('250 patent) <br><br> Yeda's Preliminary Patent Owner Response, dated May 26, 2015, pp. 2, 8, 15, 21, 36, 40-41, 52-53 <br><br> IPR2015-00644 ('413 patent) <br><br> Yeda's Preliminary Patent Owner Response, dated May 26, 2015, pp. 2, 8, 15, 21, 37, 41-42, 53, 55 |
| '250 <br> '413 | 19 <br> 1, 19, 20 | "reducing frequency of relapses"/ <br><br> "reducing the frequency of relapses" | This term constitutes a claim limitation and, other than the construction of "reducing" set forth in Section I, does not require construction; plain and ordinary meaning. <br><br> Intrinsic Evidence: <br><br> '250 Patent Specification <br><br> Col. 4, lines 21-22 | IPR2015-00830 ('302 patent) <br><br> Yeda's Preliminary Patent Owner Response, dated June 19, 2015, pp. 2, 7, 15, 21, 31, 37, 43, 46, 49, 56-57 |

| Patent | Claim(s) | Claim Terms Defendants Contend Are Not Limiting | Teva's Response/Proposed Construction and Intrinsic Evidence | Defendants' Intrinsic Evidence that Phrases Are Not Claim Limitations |
|---|---|---|---|---|
| | | | Col. 12, lines 10-11 and 27-29 | |
| | | | Col. 13, lines 4-17 and 29-38 | |
| | | | Col. 14, lines 28-35 | |
| | | | <u>'250 Patent File History</u> | |
| | | | 5/14/12 Response to Office Action at 12-20 (TEVCOP00000202-210) | |
| | | | 6/15/12 Notice of Allowance (TEVCOP00001161-165) | |
| | | | <u>'413 Patent Specification</u> | |
| | | | Col. 4, lines 16-17 | |
| | | | Col. 11, lines 66-67 | |
| | | | Col. 12, lines 15-17 | |
| | | | Col. 12, line 59 to col. 13, line 5 | |
| | | | Col. 13, lines 18-27 | |
| | | | Col. 14, lines 18-25 | |
| | | | <u>'413 Patent File History</u> | |
| | | | 8/6/12 Response to Office Action at 11-18 (TEVCOP00001745-752) | |
| | | | 1/17/13 Notice of Allowance (TEVCOP00002911-918) | |
| '250 '413 | 1, 15, 19 1, 19, 20 | "therapeutically effective" | This term constitutes a claim limitation and does not require construction; plain and ordinary meaning. | |
| | | | <u>Intrinsic Evidence:</u> '250 Patent Specification | |

| Patent | Claim(s) | Claim Terms Defendants Contend Are Not Limiting | Teva's Response/Proposed Construction and Intrinsic Evidence | Defendants' Intrinsic Evidence that Phrases Are Not Claim Limitations |
|---|---|---|---|---|
| | | | Col. 15, line 52 to col. 16, line 18<br><br>'250 Patent File History<br><br>5/14/12 Response to Office Action at 2 (TEVCOP00000191):  Claim 1 amended to recite a "therapeutically effective regimen" and that the "regimen" is "sufficient to alleviate the symptom of the patient."<br><br>5/14/12 Response to Office Action at 7 and 10 (TEVCOP00000197 and 200):  "Applicant has amended claim 1 to recite a 'therapeutically effective regimen' and that the 'regimen' is 'sufficient to alleviate the symptom.'  As amended the claims cannot be reasonably construed to read on only a single seven day period of administration at least because the claims as amended require a 'regimen.'"<br><br>5/14/12 Response to Office Action at 9-10 (TEVCOP00000199-200):  "Here, in the specification, the invention is illustrated in the Examples by a study assessing 'efficacy, safety and tolerability of Glatiramer Acetate (GA) injection 40mg/ml administered three times weekly by subcutaneous injection.' Specification at page 20, Example 1. The Discussion section explains that 'the subject application discloses an effective | |

| Patent | Claim(s) | Claim Terms Defendants Contend Are Not Limiting | Teva's Response/Proposed Construction and Intrinsic Evidence | Defendants' Intrinsic Evidence that Phrases Are Not Claim Limitations |
|---|---|---|---|---|
| | | | low frequency dosage regimen of GA administration.' Specification at page 37, lines 8-9.  In light of this, a person of ordinary skill in the art would clearly understand that recitation of administering to the human patient a therapeutically effective regimen of three subcutaneous injections over a period of seven days with at least one day between every subcutaneous injection defined a regimen for therapeutic effect."  5/14/12 Response to Office Action at 12-20 (TEVCOP00000202-210)  6/15/12 Notice of Allowance (TEVCOP00001161-165)  '413 Patent File History  8/6/12 Response to Office Action at 2, 8-9, and 11-18 (TEVCOP00001729, TEVCOP00001742-743, and TEVCOP00001745-752)  1/17/13 Notice of Allowance (TEVCOP00002911-918) | |
| '250 | 1 | "regimen being sufficient to alleviate the symptom of the patient" | This term constitutes a claim limitation and does not require construction; plain and ordinary meaning.  Intrinsic Evidence:  '250 Patent Specification | |

| Patent | Claim(s) | Claim Terms Defendants Contend Are Not Limiting | Teva's Response/Proposed Construction and Intrinsic Evidence | Defendants' Intrinsic Evidence that Phrases Are Not Claim Limitations |
|---|---|---|---|---|
| | | | Col. 15, line 52 to col. 16, line 18 <br><br> '250 Patent File History <br><br> 5/14/12 Response to Office Action at 2 (TEVCOP00000191):  Claim 1 amended to recite a "therapeutically effective regimen" and that the "regimen" is "sufficient to alleviate the symptom of the patient." <br><br> 5/14/12 Response to Office Action at 7 and 10 (TEVCOP00000197-200):  "Applicant has amended claim 1 to recite a 'therapeutically effective regimen' and that the 'regimen' is 'sufficient to alleviate the symptom.'  As amended the claims cannot be reasonably construed to read on only a single seven day period of administration at least because the claims as amended require a 'regimen.'" <br><br> 5/14/12 Response to Office Action at 9-10 (TEVCOP00000199-200):  "Here, in the specification, the invention is illustrated in the Examples by a study assessing 'efficacy, safety and tolerability of Glatiramer Acetate (GA) injection 40mg/ml administered three times weekly by subcutaneous injection.'  Specification at page 20, Example 1.  The Discussion section explains that 'the subject application discloses an effective | |

| Patent | Claim(s) | Claim Terms Defendants Contend Are Not Limiting | Teva's Response/Proposed Construction and Intrinsic Evidence | Defendants' Intrinsic Evidence that Phrases Are Not Claim Limitations |
|---|---|---|---|---|
| | | | low frequency dosage regimen of GA administration.' Specification at page 37, lines 8-9. In light of this, a person of ordinary skill in the art would clearly understand that recitation of administering to the human patient a therapeutically effective regimen of three subcutaneous injections over a period of seven days with at least one day between every subcutaneous injection defined a regimen for therapeutic effect." 5/14/12 Response to Office Action at 12-20 (TEVCOP00000202-210) 6/15/12 Notice of Allowance (TEVCOP00001161-165) | |
| '250 | 2 | "wherein alleviating a symptom comprises reducing the frequency of relapses" | This term constitutes a claim limitation and, other than the constructions of "alleviating" and "reducing" set forth in Section I, does not require construction; plain and ordinary meaning. Intrinsic Evidence: '250 Patent Specification Col. 4, lines 21-22 Col. 12, lines 10-11 and 27-29 Col. 13, lines 4-17 and 29-38 Col. 14, lines 28-35 '250 Patent File History | |

| Patent | Claim(s) | Claim Terms Defendants Contend Are Not Limiting | Teva's Response/Proposed Construction and Intrinsic Evidence | Defendants' Intrinsic Evidence that Phrases Are Not Claim Limitations |
|---|---|---|---|---|
| | | | 5/14/12 Response to Office Action at 18 (TEVCOP00000208): "Even if, *arguendo,* one were to combine the teachings of Flechter et al. with those of Cohen et al., the expected result would be a less effective therapy than that provided by 20mg daily.  Flechter et al. showed in their results that alternate day dosing with 20mg GA is demonstrably <u>worse</u> therapeutically than 20mg GA daily.  Flechter et al. stated that alternate day GA therapy 'compar[es] favorably with the effects of daily injections.'  Flechter et al., page 11, Abstract.  A closer look at the results section of Flechter et al. sheds meaning to their term 'favorably.'  One endpoint of GA clinical trials is often relapse rate, for alternate day GA that is <u>nearly double</u> that of daily GA.  Flechter et al., page 14, Table 5, fifth row (0.56 for alternate day treatment versus 0.3 for daily treatment)." 5/14/12 Response to Office Action at 12-20 (TEVCOP00000202-210) 6/15/12 Notice of Allowance (TEVCOP00001161-165) | |
| '250 | 4 | "wherein alleviating a symptom comprises | This term constitutes a claim limitation and, other than the constructions of | |

| Patent | Claim(s) | Claim Terms Defendants Contend Are Not Limiting | Teva's Response/Proposed Construction and Intrinsic Evidence | Defendants' Intrinsic Evidence that Phrases Are Not Claim Limitations |
|---|---|---|---|---|
| | | reducing the mean cumulative number of Gd-enhancing lesions, reducing the mean number of new $T_2$ lesions, reducing the total volume of $T_2$ lesions, or reducing the cumulative number of enhancing lesions on $T_1$-weighted images in the brain of the patient" | "alleviating" and "reducing" set forth in Section I, does not require construction; plain and ordinary meaning.<br><br>Intrinsic Evidence:<br>'250 Patent Specification<br>Col. 4, lines 23-31<br>Col. 12, lines 13-18 and 39-45<br>Col. 13, lines 39-42 and 54-65<br>Col. 14, lines 42-61<br>'250 Patent File History<br>5/14/12 Response to Office Action at 12-20 (TEVCOP00000202-210)<br>6/15/12 Notice of Allowance (TEVCOP00001161-165) | |
| '250 | 5 | "wherein alleviating a symptom comprises reducing brain atrophy in the patient" | This term constitutes a claim limitation and, other than the constructions of "alleviating" and "reducing" set forth in Section I and "brain atrophy" set forth in Section II, does not require construction; plain and ordinary meaning.<br><br>Intrinsic Evidence:<br>'250 Patent Specification<br>Col. 4, lines 32-33<br>Col. 12, lines 19-20 and 46-49<br>Col. 13, lines 43-44 | |

| Patent | Claim(s) | Claim Terms Defendants Contend Are Not Limiting | Teva's Response/Proposed Construction and Intrinsic Evidence | Defendants' Intrinsic Evidence that Phrases Are Not Claim Limitations |
|---|---|---|---|---|
| | | | Col. 13, line 66 to col. 14 line 5 Col. 14, line 62 to col. 15, line 4 <u>'250 Patent File History</u> 5/14/12 Response to Office Action at 12-20 (TEVCOP00000202-210) 6/15/12 Notice of Allowance (TEVCOP00001161-165) | |
| '250 | 6 | "wherein alleviating a symptom comprises increasing the time to a confirmed relapse in the patient" | This term constitutes a claim limitation and, other than the constructions of "alleviating," "increasing the time to a confirmed relapse," and "time to a confirmed relapse" set forth in Section I, does not require construction; plain and ordinary meaning. <u>Intrinsic Evidence:</u> <u>'250 Patent Specification</u> Col. 4, lines 34-35 Col. 12, lines 23-24 Col. 14, lines 7-13 <u>'250 Patent File History</u> 5/14/12 Response to Office Action at 12-20 (TEVCOP00000202-210) 6/15/12 Notice of Allowance (TEVCOP00001161-165) | |
| '250 | 7 | "wherein alleviating a symptom comprises | This term constitutes a claim limitation and, other than the constructions of | |

| Patent | Claim(s) | Claim Terms Defendants Contend Are Not Limiting | Teva's Response/Proposed Construction and Intrinsic Evidence | Defendants' Intrinsic Evidence that Phrases Are Not Claim Limitations |
|---|---|---|---|---|
| | | reducing the total number of confirmed relapses in the patient" | "alleviating" and "reducing" set forth in Section I, does not require construction; plain and ordinary meaning.<br><br>Intrinsic Evidence:<br>'250 Patent Specification<br>Col. 4, lines 37-38<br>Col. 12, lines 10-11 and 27-29<br>Col. 13, lines 1-17 and 29-38<br>Col. 14, lines 28-35<br>'250 Patent File History<br>5/14/12 Response to Office Action at 12-20 (TEVCOP00000202-210)<br>6/15/12 Notice of Allowance (TEVCOP00001161-165) | |
| '250 | 8 | "wherein alleviating a symptom comprises reducing the progression of MRI-monitored disease activity in the patient" | This term constitutes a claim limitation and, other than the constructions of "alleviating" and "reducing" set forth in Section I, does not require construction; plain and ordinary meaning.<br><br>Intrinsic Evidence:<br>'250 Patent Specification<br>Col. 4, lines 39-41<br>Col. 14, lines 36-41<br>'250 Patent File History<br>5/14/12 Response to Office Action at 12- | |

| Patent | Claim(s) | Claim Terms Defendants Contend Are Not Limiting | Teva's Response/Proposed Construction and Intrinsic Evidence | Defendants' Intrinsic Evidence that Phrases Are Not Claim Limitations |
|---|---|---|---|---|
| | | | 20 (TEVCOP00000202-210) 6/15/12 Notice of Allowance (TEVCOP00001161-165) | |
| '250 | 9 | "wherein alleviating a symptom comprises reducing the number of new hypointense lesions on enhanced $T_1$ scans in the patient or reducing the total volume of hypointense lesions on enhanced $T_1$ scans in the patient" | This term constitutes a claim limitation and, other than the constructions of "alleviating" and "reducing" set forth in Section I, does not require construction; plain and ordinary meaning. Intrinsic Evidence: '250 Patent Specification Col. 4, lines 44-49 Col. 12, lines 41-45 Col. 14, lines 47-61 '250 Patent File History 5/14/12 Response to Office Action at 12-20 (TEVCOP00000202-210) 6/15/12 Notice of Allowance (TEVCOP00001161-165) | |
| '250 | 10 | "wherein alleviating a symptom comprises reducing a level of disability as measured by EDSS Score, by the work productivity and activities impairment-General Health (WPAI-GH) questionnaire, or by | This term constitutes a claim limitation and, other than the constructions of "alleviating" and "reducing" set forth in Section I, does not require construction; plain and ordinary meaning. Intrinsic Evidence: '250 Patent Specification Col. 4, lines 50-52 and 58-64 | |

| Patent | Claim(s) | Claim Terms Defendants Contend Are Not Limiting | Teva's Response/Proposed Construction and Intrinsic Evidence | Defendants' Intrinsic Evidence that Phrases Are Not Claim Limitations |
|---|---|---|---|---|
| | | EuroQoL (EQ5D) questionnaire in the patient" | Col. 12, lines 30-35 and 50-55 <br><br> Col. 15, lines 5-10 and 35-50 <br><br> '250 Patent File History <br><br> 5/14/12 Response to Office Action at 18 (TEVCOP00000208): "In addition, patients treated with alternate day 20mg GA experienced substantial disease progression during the course of their treatment as measured by a change in EDSS score. Flechter et al., page 13, Table 3, seventh column . . . Cohen et al. showed that there was no change in EDSS score and no difference in the change in EDSS score between 40mg daily and 20mg daily GA. Cohen et al., page 942, Table 2, 12th row . . . Moreover, despite the theory proposed by Cohen et al., the FORTE trial taught that '[t]he 40mg dose did not demonstrate increased efficacy' over the 20mg daily dose. Exhibit A, first paragraph." <br><br> 5/14/12 Response to Office Action at 12-20 (TEVCOP00000202-210) <br><br> 6/15/12 Notice of Allowance (TEVCOP00001161-165) | |

| Patent | Claim(s) | Claim Terms Defendants Contend Are Not Limiting | Teva's Response/Proposed Construction and Intrinsic Evidence | Defendants' Intrinsic Evidence that Phrases Are Not Claim Limitations |
|---|---|---|---|---|
| '250 | 11 | "wherein alleviating a symptom comprises reducing a change in EDSS Score in the patient or reducing a change in Ambulation Index in the patient" | This term constitutes a claim limitation and, other than the constructions of "alleviating" and "reducing" set forth in Section I, does not require construction; plain and ordinary meaning.<br><br>Intrinsic Evidence:<br>'250 Patent Specification<br>Col. 4, lines 53-56<br>Col. 12, lines 34-37<br>Col. 15, lines 21-34<br>'250 Patent File History<br>5/14/12 Response to Office Action at 18 (TEVCOP00000208): "In addition, patients treated with alternate day 20mg GA experienced substantial disease progression during the course of their treatment as measured by a change in EDSS score. Flechter et al., page 13, Table 3, seventh column . . . Cohen et al. showed that there was no change in EDSS score and no difference in the change in EDSS score between 40mg daily and 20mg daily GA. Cohen et al., page 942, Table 2, 12th row . . . Moreover, despite the theory proposed by Cohen et al., the FORTE trial taught that '[t]he 40mg dose did not demonstrate increased efficacy over the | |

| Patent | Claim(s) | Claim Terms Defendants Contend Are Not Limiting | Teva's Response/Proposed Construction and Intrinsic Evidence | Defendants' Intrinsic Evidence that Phrases Are Not Claim Limitations |
|---|---|---|---|---|
| | | | 20mg daily dose.  Exhibit A, first paragraph." 5/14/12 Response to Office Action at 12-20 (TEVCOP00000202-210) 6/15/12 Notice of Allowance (TEVCOP00001161-165) | |
| '250 '413 | 14 7 | "wherein the frequency of an immediate post injection reaction or the frequency of an injection site reaction is reduced relative to daily subcutaneous administration of 20 mg glatiramer acetate" | This term constitutes a claim limitation and does not require construction; plain and ordinary meaning. Intrinsic Evidence: '250 Patent Specification Col. 5, lines 16-19, 30-33, and 51-54 '250 Patent File History 5/14/12 Response to Office Action at 12-20 (TEVCOP00000202-210) 6/15/12 Notice of Allowance (TEVCOP00001161-165) '413 Patent Specification Col. 5, lines 9-12, 24-27, and 45-48 '413 Patent File History 8/6/12 Response to Office Action at 11-18 (TEVCOP00001745-752) 1/17/13 Notice of Allowance (TEVCOP00002911-918) | |
| '250 | 15 | "wherein the regimen is therapeutically effective, | This term constitutes a claim limitation and, other than the construction of | |

| Patent | Claim(s) | Claim Terms Defendants Contend Are Not Limiting | Teva's Response/Proposed Construction and Intrinsic Evidence | Defendants' Intrinsic Evidence that Phrases Are Not Claim Limitations |
|---|---|---|---|---|
| | | so as to thereby increase the tolerability of GA treatment in the patient" | "tolerability" set forth in Section I, does not require construction; plain and ordinary meaning.<br><br>Intrinsic Evidence:<br>'250 Patent Specification<br>Col. 2, line 65 to col. 3, line 7<br>Col. 3, lines 31-51 and 60-67<br>Col. 12, lines 62-67<br>Col. 15, line 52 to col. 16, line 18<br>'250 Patent File History<br>5/14/12 Response to Office Action at 4 (TEVCOP00000193):  Claim 16 amended to recite "wherein the regimen is therapeutically effective, so as to thereby increase the tolerability of GA treatment in the patient."<br><br>5/14/12 Response to Office Action at 9-10 (TEVCOP00000199-200):  "Here, in the specification, the invention is illustrated in the Examples by a study assessing 'efficacy, safety and tolerability of Glatiramer Acetate (GA) injection 40mg/ml administered three times weekly by subcutaneous injection.' Specification at page 20, Example l.  The Discussion section explains that 'the subject application discloses an effective low frequency dosage regimen of GA | |

| Patent | Claim(s) | Claim Terms Defendants Contend Are Not Limiting | Teva's Response/Proposed Construction and Intrinsic Evidence | Defendants' Intrinsic Evidence that Phrases Are Not Claim Limitations |
|---|---|---|---|---|
| | | | administration.'  Specification at page 37, lines 8-9.  In light of this, a person of ordinary skill in the art would clearly understand that recitation of administering to the human patient a therapeutically effective regimen of three subcutaneous injections over a period of seven days with at least one day between every subcutaneous injection defined a regimen for therapeutic effect." <br><br> 5/14/12 Response to Office Action at 12-20 (TEVCOP00000202-210) <br><br> 6/15/12 Notice of Allowance (TEVCOP00001161-165) | |
| '250 | 16 | "wherein increasing the tolerability of glatiramer acetate treatment in the human patient suffering from a relapsing form of multiple sclerosis comprises reducing the frequency of an immediate post injection reaction" | This term constitutes a claim limitation and, other than the constructions of "relapsing form of multiple sclerosis" and "tolerability" set forth in Section I, does not require construction; plain and ordinary meaning. <br><br> Intrinsic Evidence: <br> '250 Patent Specification <br> Col. 5, lines 16-19 and 30-33 <br> Col. 15, line 52 to col. 16, line 18 <br> '250 Patent File History <br> 5/14/12 Response to Office Action at 12-20 (TEVCOP00000202-210) | |

| Patent | Claim(s) | Claim Terms Defendants Contend Are Not Limiting | Teva's Response/Proposed Construction and Intrinsic Evidence | Defendants' Intrinsic Evidence that Phrases Are Not Claim Limitations |
|---|---|---|---|---|
| | | | 6/15/12 Notice of Allowance (TEVCOP00001161-165) | |
| '250 | 17 | "wherein increasing the tolerability of glatiramer acetate treatment in the human patient suffering from a relapsing form of multiple sclerosis comprises reducing the frequency of an injection site reaction" | This term constitutes a claim limitation and, other than the constructions of "relapsing form of multiple sclerosis" and "tolerability" set forth in Section I, does not require construction; plain and ordinary meaning. <br><br> Intrinsic Evidence: <br> '250 Patent Specification <br> Col. 5, lines 16-19 and 51-54 <br> Col. 15, line 52 to col. 16, line 18 <br> '250 Patent File History <br> 5/14/12 Response to Office Action at 12-20 (TEVCOP00000202-210) <br> 6/15/12 Notice of Allowance (TEVCOP00001161-165) | |
| '250 '413 | 19 1, 19, 20 | "the regimen being sufficient to reduce frequency of relapses in the human patient" | This term constitutes a claim limitation and, other than the construction of "reducing" set forth in Section I, does not require construction; plain and ordinary meaning. <br><br> Intrinsic Evidence: <br> '250 Patent Specification <br> Col. 4, lines 21-22 <br> Col. 12, lines 10-11 and 27-29 | |

33

| Patent | Claim(s) | Claim Terms Defendants Contend Are Not Limiting | Teva's Response/Proposed Construction and Intrinsic Evidence | Defendants' Intrinsic Evidence that Phrases Are Not Claim Limitations |
|--------|----------|--------|--------|--------|
| | | | Col. 13, lines 4-17 and 29-38<br><br>Col. 14, lines 28-35<br><br>'250 Patent File History<br><br>5/14/12 Response to Office Action at 18 (TEVCOP00000208): "Even if, *arguendo,* one were to combine the teachings of Flechter et al. with those of Cohen et al., the expected result would be a less effective therapy than that provided by 20mg daily.  Flechter et al. showed in their results that alternate day dosing with 20mg GA is demonstrably <u>worse</u> therapeutically than 20mg GA daily.  Flechter et al. stated that alternate day GA therapy 'compar[es] favorably with the effects of daily injections.' Flechter et al., page 11, Abstract.  A closer look at the results section of Flechter et al. sheds meaning to their term 'favorably.'  One endpoint of GA clinical trials is often relapse rate, for alternate day GA that is <u>nearly double</u> that of daily GA.  Flechter et al., page 14, Table 5, fifth row (0.56 for alternate day treatment versus 0.3 for daily treatment)."<br><br>5/14/12 Response to Office Action at 12-20 (TEVCOP00000202-210)<br><br>6/15/12 Notice of Allowance | |

| Patent | Claim(s) | Claim Terms Defendants Contend Are Not Limiting | Teva's Response/Proposed Construction and Intrinsic Evidence | Defendants' Intrinsic Evidence that Phrases Are Not Claim Limitations |
|---|---|---|---|---|
| | | | (TEVCOP00001161-165) | |
| | | | '413 Patent Specification | |
| | | | Col. 4, lines 16-17 | |
| | | | Col. 11, lines 66-67 | |
| | | | Col. 12, lines 15-17 | |
| | | | Col. 12, line 59 to col. 13, line 5 | |
| | | | Col. 13, lines 18-27 | |
| | | | Col. 14, lines 18-25 | |
| | | | '413 Patent File History | |
| | | | 8/6/12 Response to Office Action at 9 (TEVCOP00001743):  "In light of this, a person of ordinary skill in the art would clearly understand that recitation of administering to the human patient a therapeutically effective regimen of three subcutaneous injections over a period of seven days with at least one day between every subcutaneous injection defined a regimen for therapeutic effect . . . Applicant has amended claim 1 to recite a 'therapeutically effective regimen' and that the 'regimen' is 'sufficient to reduce the frequency of relapses.' . . . As amended the claims cannot be reasonably construed to read on only a single seven day period of administration, at least because the claims as amended require a 'regimen.'" | |

| Patent | Claim(s) | Claim Terms Defendants Contend Are Not Limiting | Teva's Response/Proposed Construction and Intrinsic Evidence | Defendants' Intrinsic Evidence that Phrases Are Not Claim Limitations |
|---|---|---|---|---|
| | | | 8/6/12 Response to Office Action at 11-18 (TEVCOP00001745-752)<br><br>1/17/13 Notice of Allowance (TEVCOP00002911-918) | |
| '413 | 2 | "further comprising reducing the mean cumulative number of Gd-enhancing lesions in the brain of the patient" | This term constitutes a claim limitation and, other than the construction of "reducing" set forth in Section I, does not require construction; plain and ordinary meaning. | |
| | | | '413 Patent Specification<br>Col. 4, lines 18-20<br>Col. 12, lines 4-6<br>Col. 13, lines 28-31 and 49-55<br>'413 Patent File History<br>8/6/12 Response to Office Action at 11-18 (TEVCOP00001745-752)<br>1/17/13 Notice of Allowance (TEVCOP00002911-918) | |
| '413 | 3, 8 | "further comprising reducing the mean number of new $T_2$ lesions in the brain of the patient" | This term constitutes a claim limitation and, other than the construction of "reducing" set forth in Section I, does not require construction; plain and ordinary meaning. | |
| | | | Intrinsic Evidence:<br>'413 Patent Specification<br>Col. 4, lines 21-23 | |

| Patent | Claim(s) | Claim Terms Defendants Contend Are Not Limiting | Teva's Response/Proposed Construction and Intrinsic Evidence | Defendants' Intrinsic Evidence that Phrases Are Not Claim Limitations |
|---|---|---|---|---|
| | | | Col. 12, lines 2-3 <br> Col. 13, lines 28-31 and 44-48 <br> '413 Patent File History <br> 8/6/12 Response to Office Action at 11-18 (TEVCOP00001745-752) <br> 1/17/13 Notice of Allowance (TEVCOP00002911-918) | |
| '413 | 4, 9-11 | "further comprising reducing the cumulative number of enhancing lesions on $T_1$-weighted images" | This term constitutes a claim limitation and, other than the construction of "reducing" set forth in Section I, does not require construction; plain and ordinary meaning. | |
| | | | Intrinsic Evidence: <br> '413 Patent Specification <br> Col. 4, lines 24-26 <br> Col. 12, lines 4-6 <br> Col. 13, lines 28-31 and 49-55 <br> '413 Patent File History <br> 8/6/12 Response to Office Action at 11-18 (TEVCOP00001745-752) <br> 1/17/13 Notice of Allowance (TEVCOP00002911-918) | |
| '302 | 1 | "so as to treat the human patient" | This term constitutes a claim limitation and does not require construction; plain and ordinary meaning. | |

| Patent | Claim(s) | Claim Terms Defendants Contend Are Not Limiting | Teva's Response/Proposed Construction and Intrinsic Evidence | Defendants' Intrinsic Evidence that Phrases Are Not Claim Limitations |
|---|---|---|---|---|
| | | | Intrinsic Evidence: <br><br> '302 Patent File History <br><br> 8/5/14 Response to Office Action at 7-15 (TEVCOP00552839-847) <br><br> 12/24/14 Notice of Allowance (TEVCOP00553982-989) | |

## IV.  CONSTRUCTIONS AGREED TO IF PHRASES ABOVE ARE LIMITING

As noted in Section III above, Defendants maintain that certain claim phrases do not constitute claim limitations, in which case those terms need no construction.  Plaintiffs disagree and contend that each such claim phrase is a limitation.  If the Court determines the phrases are limitations, however, the parties agree to the following constructions.

| | | | |
|---|---|---|---|
| '250 | 15, 16, 17 | "tolerability" | Defendants contend that the phrase in which this term appears is not a limitation.  Plaintiffs disagree and contend that this term is a limitation.  If the Court finds this term is a limitation, the parties agree on the following construction:  "The ability to tolerate discomfort associated with glatiramer acetate treatment." |
| '250 | 1-2, 4-11 | "alleviating" | Defendants contend that the phrase in which this term appears is not a limitation.  Plaintiffs disagree and contend that the phrase in which this term appears is a limitation.  If the Court finds this term is a limitation, the parties agree that it means "alleviating relative to placebo treatment or no treatment." |
| '250<br><br>'413 | 2, 4, 5, 7-11, 19<br><br>1-4, 8-11, 19, 20 | "reducing"/"reduce" | Defendants contend that the phrase in which this term appears is not a limitation.  Plaintiffs disagree and contend that the phrase in which this term appears is a limitation.  If the Court finds this term is a limitation, the parties agree that it means "reducing/reduce relative to placebo treatment or no treatment." |
| '250 | 6 | "increasing the time to a confirmed relapse" | Defendants contend that the phrase in which this term appears is not a limitation.  Plaintiffs disagree and contend that the phrase in which this term appears is a limitation.  If the Court finds this term is a limitation, the parties agree that it means "increasing the time to a confirmed relapse relative to placebo treatment or no treatment." |